**UNITED STATES of America,
Appellee,**

v.

**Tyson KING, Defendant-Appellant.**

**No. 289, Docket 30753.**

United States Court of Appeals
Second Circuit.

Argued Jan. 16, 1967.

Decided March 6, 1967.

Donald F. McCaffrey, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New

7. Rule 52(a) F.R.Crim.P.

York, Brooklyn, N. Y., on the brief), for appellee.

Richard I. Rosenkranz, New York City (Joshua N. Koplovitz and Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before MEDINA, ANDERSON and FEINBERG, Circuit Judges.

MEDINA, Circuit Judge:

Tyson King appeals from a conviction by Judge Rayfiel, sitting without a jury, of aiding and abetting the "carrying on" of the business of a distiller without giving bond, in violation of 26 U.S.C. Section 5601(a) (4), finding it not necessary to apply the presumption of "carrying on" the illicit business from appellant's presence at the still site as provided in the statute. Appellant challenges the sufficiency of the evidence in the absence of the application of the presumption and also contends that the verdict was fatally inconsistent as appellant was acquitted on another count charging him with "engaging in" the business of a distiller in violation of 26 U.S.C. Sections 5601(a) (1) and 5179(a). We find the evidence sufficient to support the conviction. We also rule that the alleged inconsistency affords no basis for a reversal of the judgment.

At some date prior to May 11, 1964, agents of the Federal Alcohol Tax Unit learned of a suspected still site located near Bellport, Long Island. At approximately 11:00 P.M. of that day, Agents Zimmerman and Sanders examined the site and the 150 gallons of mash which was present and determined that the mash was ready for distillation. Continuous surveillance of the site was begun from a concealed point some 250 to 300 feet distant. The still site was located in a small clearing within a heavily wooded area. The agents placed themselves on the opposite side of a larger clearing and thus had a reasonably clear view of the path which led into the site.

At approximately 6:10 A.M. the following morning, Julius Caesar King, not a party to this appeal but a codefendant below, was observed to enter the still site carrying a large paper package. He stayed about 10 minutes, apparently working on the equipment, and then left without the package. At eight o'clock that evening, Julius Caesar King returned to the site, this time accompanied by appellant, Tyson King. Each of the two men was observed as he emerged from the wooded area and looked up and down the path and clearing as if watching for unwelcome visitors. After waiting for several minutes, the agents crawled to a position about 15 feet from the site, from which they observed Julius Caesar King handling the equipment while Tyson King was holding a lighted flashlight. At approximately 8:30 one of the agents shouted: "Federal Officers. Stay where you are." Tyson King attempted to flee but was arrested within 75 feet of the still by an agent who closed in from the other direction.

There was testimony to the effect that at the still site was all the equipment needed to operate a distillery, including a 125 gallon pot, a condenser, a gas burner, 30 gallons of gasoline, a funnel and six 50 gallon vats, three of which were filled with mash and two filled with water. A United States Chemist testified that the mash was fit to be distilled as it had been fermenting for four to five days. The agents testified that the equipment appeared to be in good working order and that the still could have been made operative within half an hour.

Tyson King did not testify and offered no evidence in his defense.

I.

 This evidence was clearly sufficient to establish that the business of a distiller was being carried on. It is not necessary for a conviction under this section that the fires be lit. The showing made here that the equipment was fully assembled, albeit not entirely connected, and the mash fermented was more than enough to establish the basic fact.

But appellant insists that there was nothing in the proofs to connect him with the illegal enterprise. He points out that

this Circuit has held "the mere furnishing of company to a person engaged in crime" is not an aiding and abetting. United States v. Garguilo, 310 F.2d 249, 253 (2 Cir. 1962). But Judge Friendly, writing for the Court in that case, also stated that "evidence of an act of relatively slight moment may warrant a jury's finding participation in a crime" and

> (t)here may even be instances where the mere presence of a defendant at the scene of a crime he knows is being committed will permit a jury to be convinced beyond a reasonable doubt that the defendant sought "by his action to make it succeed"—for example * * * the maintenance at the scene of crime of someone useful as a lookout.

█ Here the evidence not only warranted a finding that Tyson King was acting as a lookout but also a finding that he was physically assisting Julius Caesar King in the manipulation of the equipment. In addition, the Government proved that Tyson King fled from the site when the arresting officers announced their presence. We find no occasion here to make a precise appraisal of the weight to be given to this separate item of the evidence. Proof of flight is certainly admissible and we have no doubt that on the record as a whole Judge Rayfiel was justified in concluding as matter of fact that this appellant aided and abetted a violation of Section 5601(a) (4).

None of the cases cited by appellant hold the contrary. In United States v. De Vito, 68 F.2d 837 (2 Cir. 1934), the charge was possession and the proof showed only presence, no conduct of any sort. Graceffo v. United States, 46 F. 2d 852 (3 Cir. 1931), is to the same effect. And in Girgenti v. United States, 81 F.2d 741 (3 Cir. 1936), the defendants were arrested as they drove up to the farm where the still was located. Compare Barrett v. United States, 322 F.2d 292 (5 Cir. 1963), reversed sub nom. United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

In Fowler v. United States, 234 F.2d 697 (5 Cir. 1956), the defendant was not shown to have visited the still site but only to have deposited gasoline, which the court noted could be used for a variety of purposes, at an unspecified distance away from the site.

## II.

Tyson King was tried under a five count indictment but was convicted only of "carrying on" the business of a distiller. One of the counts on which he was acquitted was for "engaging in" the business of a distiller without the required registration. Appellant argues that the terms "carrying on" and "engaging in" are synonymous and that, therefore, the verdict is inconsistent. He also contends that acquittal under the "engaging in" count is *res judicata* as to the "carrying on" count, citing Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948).

█ As the *res judicata* doctrine can have no application to separate counts tried together under a single indictment, United States v. Maybury, 274 F.2d 899 (2 Cir. 1960), the principle reaffirmed in *Sealfon* does not come into play here.

█ Moreover, what is said to be an "inconsistency" here turns out to be a mere difference in legal interpretation of the two phrases, "engaging in" and "carrying on." There is no factual inconsistency as was found to exist in *Maybury*. What Judge Rayfiel said in effect was that he had some doubt whether what was proved against appellant amounted to "engaging in" the business of a distiller but that these same proofs "established beyond a reasonable doubt that he at least aided and abetted his co-defendant Julius Caesar King, in carrying on the business of a distiller at the premises referred to in the indictment." And see United States v. Wilson, 342 F.2d 43 (2 Cir. 1965).

We are grateful to Richard I. Rosenkranz, representing the Legal Aid Society, for his able presentation of appellant's points.

Affirmed.