Joe H. HAYNESWORTH, Appellant,

v.

UNITED STATES, Appellee.

No. 82–944.

District of Columbia Court of Appeals.

Argued April 19, 1983.

Decided Feb. 15, 1984.

Judith Mroczka, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Public Defender Service, Washington, D.C., at the time briefs were filed, was on briefs for appellant.

Bruce A. Peterson, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time brief was filed, John R. Fisher, Asst. U.S. Atty., Washington, D.C., at the time brief was filed, and Beverly Purdue, Asst. U.S. Atty., Washington, D.C., were on brief for appellee.

Before MACK and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

Following a bench trial in June of 1982, appellant was convicted of taking property without right, D.C.Code § 22–1211 (1981) (repealed December 1982), and simple assault, D.C.Code § 22–504 (1981). Appellant argues that the court's finding that he was guilty of simple assault is inconsistent with its finding that he was not guilty of possession of a prohibited weapon, D.C.Code § 22–3214(b) (1981). Appellant contends that this asserted inconsistency requires reversal of his simple assault conviction. We affirm.

The government presented evidence that on the morning of November 13, 1981, appellant was dismissed from his job at Snyders Shoe Town in the District of Columbia following a verbal altercation with his supervisor, Mark Van Grack. Immediately following his dismissal, appellant was granted permission to use the store telephone located behind the service counter. At this juncture, the testimony begins to conflict.[1]

The government presented evidence that while behind the counter, appellant reached inside Van Grack's briefcase and removed a pistol, and Van Grack then quickly departed from the store. Clarence Scott, another store employee, testified that he then reprimanded appellant for removing contents from Van Grack's briefcase, and appellant responded by pointing the pistol at Scott. Scott testified that appellant then lowered the pistol and walked out of the store. Further testimony for the government indicated that a police officer apprehended appellant several hours after the incident. In his possession was a loaded pistol with a serial number which matched that of Van Grack's pistol.

Appellant, on the other hand, testified that while he was using the store telephone to contact the Wage and Hour Board about his dismissal, Van Grack reached for a pistol that was located in a cubbyhole behind the service counter. Fearful that he was going to be harmed, appellant stated that he picked up the pistol before Van Grack and immediately left the store without threatening anyone. Appellant testified further that upon leaving the store, he went to an alley and unloaded the gun with the intention of turning it over to someone he knew in the police department.

In announcing his findings, the trial judge found that the government had not demonstrated an intent to steal on the part of appellant, thereby precluding a conviction of petit larceny. He concluded, how-

1. Appellant did not exercise his right to request special findings of fact by the trial judge pursu-  ant to Super.Ct.Crim.R. 23(c).

ever, that there was sufficient evidence to warrant convictions of taking property without right and simple assault. Finally, appellant was found not guilty of possession of a prohibited weapon.

The essential elements of the offense of possession of a prohibited weapon, as defined in D.C.Code § 22–3214(b) (1981), are possession of a weapon with intent to use it unlawfully against another.[2] In finding appellant guilty of simple assault, the trial judge necessarily concluded that appellant possessed a pistol and unlawfully used it against another.[3] Pointing to these conclusions, appellant argues that it was inconsistent for the trial judge to have convicted him of assault while finding him not guilty of possession of a prohibited weapon. He contends this apparent inconsistency requires reversal of his assault conviction.

I

█ It is established that inconsistent criminal verdicts rendered by a jury should not be disturbed. *Hamling v. United States,* 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974); *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932); *Steadman v. United States,* 358 A.2d 329, 332 (D.C.1976); *Copening v. United States,* 353 A.2d 305, 313 (D.C.1976). This principle is premised on the reality that the requirement of unanimity often causes a jury to reach compromise verdicts. In the interest of promoting the often necessary process of compromise among jurors in their differing assessments of evidence, courts tolerate inconsistency in jury verdicts.

Toleration of inconsistency in judgments rendered by trial judges, however, is not supported by the jury rationale. Decisions of trial judges do not involve collective de-

liberation or compromise in the assessment of evidence. It was this reasoning that led the United States Court of Appeals for the Second Circuit, in *United States v. Maybury,* 274 F.2d 899 (2d Cir.1960), to hold that inconsistent judgments rendered in a criminal case tried to a judge are to be reversed. The *Maybury* decision is the most frequently cited authority in challenges of inconsistent nonjury criminal judgments and therefore warrants discussion.

The defendant in *Maybury* had been indicted on counts of forgery and uttering a forged check with intent to defraud. At the conclusion of a nonjury trial, the trial judge acquitted the defendant of forgery but found him guilty of uttering a forged check. A divided Second Circuit panel reversed the conviction. With each member of the panel writing a separate opinion, the divided court outlined arguments for and against toleration of inconsistency in a trial judge's disposition of criminal charges.

Judge Friendly noted that toleration of inconsistency in verdicts is attributable to the "special considerations relating to the nature and function of the jury." *Id.* at 902. Specifically, he stated that toleration of inconsistency in jury verdicts is the necessary result of the Sixth Amendment's unanimity requirement. *Id.* at 903. He related that in criminal cases tried to a judge, the absence of both the unanimity requirement and the need for compromise eliminates the rationale for permitting inconsistent judgments. *Id.* Accordingly, Judge Friendly concluded that logic and the concern for preserving respect for the law and courts require trial judges to reach consistent judgments in criminal cases. *Id.*

---

2. D.C.Code § 22–3214(b) (1981) provides:

No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon.

3. The only conduct of appellant that was set forth by the government as the basis for an assault conviction was his pointing of the pistol at Scott. D.C.Code § 22–504 (1981), provides:

Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than $500 or be imprisoned not more than 12 months, or both.

Chief Judge Lumbard agreed with Judge Friendly's conclusion that inconsistency in nonjury judgments should not be tolerated. It was his view, however, that the conviction should have been reversed and the indictment dismissed in its entirety. *Id.* at 906 (Lumbard, C.J., dissenting in part). To Chief Judge Lumbard, if the defendant was again convicted after reversal and retrial, the judgment of conviction, even though reached by another judge, would nevertheless still be inconsistent with the prior acquittal on the other count. Inconsistency is unacceptable, he stated, even if the judgments resulted from separate trials. *Id.* at 907.

Judge Learned Hand dissented, however, from the view that apparent inconsistency between a judgment of acquittal and a conviction rendered by a trial judge necessarily requires reversal of the conviction. In doing so, he questioned that an erroneous acquittal on Count 1 mandates reversing a conviction on Count 2. Reversal would be warranted, he stated, only if "there was some inconsistency in the findings upon one of the facts constituting the crime charged in Count 1 and upon the same fact constituting the crime charged in Count 2." *Id.* at 908 (Hand, J., dissenting in part and concurring in part). The presence of such inconsistent factual findings would give rise to the possibility that the conviction was erroneous. But, in the absence of this type of inconsistency, reasoned Judge Hand, a person should not be spared "punishment for a crime of which he is found guilty, because he was acquitted of another crime of which he was also guilty." *Id.* To Judge Hand, exculpating the criminal was an inappropriate method for preventing "errors in judicial dialectic." He therefore would have upheld the conviction, but owing to the court's inability to agree on what judgment to render, Judge Hand reluctantly agreed to join Judge Friendly in reversing and ordering a new trial on the uttering charge only. *Id.*

Decisions of the Second Circuit subsequent to *Maybury* have demonstrated an unwillingness to broadly apply the holding of that case. In only one decision since *Maybury* has the Second Circuit reversed a conviction due to inconsistent judgments rendered by a trial judge, *Rivera v. Harris,* 643 F.2d 86 (2d Cir.), *rev'd,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981), and that decision was subsequently reversed by the Supreme Court. With the exception of *Rivera v. Harris,* the court has consistently upheld convictions that were alleged to have been inconsistent. *See, e.g., United States v. King,* 373 F.2d 813 (2d Cir.1967) (allegedly inconsistent judgments rendered by trial judge found to rest upon statutory construction and therefore upheld); *United States v. Wilson,* 342 F.2d 43, 45 (2d Cir. 1965) (judgments to be upheld "where it is merely difficult to find a truly satisfying explanation for the differing conclusions"); *United States v. Tankel,* 331 F.2d 204 (2d Cir.1964) (judgments held to be consistent though trial judge gave benefit of every doubt); *United States v. Sells,* 325 F.2d 161, 162 (2d Cir.1963) (difference in judgments justifiable despite "questionable ... testimony"); *United States v. Robinson,* 320 F.2d 880, 881 (2d Cir.1963) (convictions on narcotics charges upheld despite acquittal on conspiracy charges on basis that trial judge "may have entertained a reasonable doubt whether the activities of the defendants were carried out pursuant to an unlawful agreement").

Decisions by the United States Courts of Appeals for the Eighth and Ninth Circuits demonstrate the lack of a uniform approach in the federal circuits to this issue. The United States Court of Appeals for the Eighth Circuit indicated in *United States v. West,* 549 F.2d 545 (8th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977), that it would not follow the *Maybury* approach. Although the court in *West* found that the trial judge's judgment of acquittal on a conspiracy count was consistent with judgments of guilt on the substantive counts, it nevertheless stated that reversal would not have been appropriate even if an inconsistency had been found. Specifically, the court stated: "[W]e decline

to follow *Maybury,* but adhere to the general rule that consistency between the verdicts on a multiple-count indictment is unnecessary when a defendant is convicted on one or more counts but acquitted on the remainder." *Id.* at 553. In *United States v. Duz-Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223, 227 (9th Cir.1981), the Ninth Circuit stated that the reasons for tolerating inconsistent jury verdicts do not apply to bench trials. A nonjury trial, stated the court, does not involve collective deliberation and therefore does not raise the need for compromise in assessment of the evidence. *Id.* at 226. The court held that where co-defendants are involved, the conviction of one and the acquittal of another based upon the same evidence constitutes a denial of due process to the convicted party unless the trial judge has articulated a rational basis for the inconsistency. *Id.* at 227. Because the court resolved the case on due process grounds, it did not need to reach the question of whether inconsistency would invalidate the conviction. *Id.* at 226 n. 3.

In the District of Columbia, there has not been a clear resolution of this issue. Although this court of course adheres to the general rule that inconsistent verdicts rendered by a jury should not be disturbed, *Steadman v. United States, supra,* 358 A.2d at 332, we have not expressly adopted the same approach for inconsistency in nonjury judgments. In *Copening v. United States, supra,* 353 A.2d at 313, we noted that most courts that have considered the issue have viewed inconsistency in judgments of a trial judge as acceptable. *See* Annot. 18 A.L. R.3d 259, 284–87 (1968 & Supp.1983). The appellant in that case had been acquitted by a jury of carrying a pistol without a license and convicted by a trial judge of possession of an unregistered firearm and unregistered ammunition. Despite the apparent inconsistency in the judgments, this court affirmed the convictions and concluded that a standard of consistency is not required of the judge and jury when they perform together as a single trier. *Copening v. United States, supra,* 353 A.2d at 313. In the

present case, we must determine whether a standard of consistency applies to cases tried by trial judges.

In resolving this issue, we are given guidance by the Supreme Court's reasoning in *Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). The *Rivera* decision, however, does not actually control the outcome of this case, as it involved a collateral attack on a final judgment of a state court that had been previously affirmed on appeal. *Id.* at 343, 102 S.Ct. at 463. The alleged inconsistency in *Rivera* was between judgments as to multiple defendants, rather than between judgments as to multiple counts of an indictment. The Court stated that the case did not concern "the significance that an appellate court may attach to an apparent inconsistency in a verdict that is subject to review on direct appeal." *Id.* Nevertheless, the reasoning employed by the Court in *Rivera* is helpful in resolving the issue presented to us in this appeal.

In a nonjury trial, the respondent in *Rivera,* along with a co-defendant, was convicted of charges arising out of a robbery. A second co-defendant was acquitted of the same charges. The judgments were not accompanied by findings explaining the basis for the trial judge's conclusions. The respondent contended that the court's determinations were incapable of being rationally reconciled, and that his conviction therefore violated the Due Process Clause of the Fourteenth Amendment. The United States Court of Appeals for the Second Circuit in *Rivera v. Harris, supra,* 643 F.2d at 96–97, held that the absence of appropriate findings in support of the facially inconsistent judgments violated the Due Process Clause. The judgment was reversed and remanded with instructions to enter an order conditionally vacating petitioner's conviction and awarding him a new trial unless the trial judge could demonstrate through findings issued within 90 days that the conviction was invalid. *Id.* at 97.

The Supreme Court rejected the Second Circuit's holding and ruled that the court had erred in requiring a state trial judge to explain his reasons for acquitting a defendant in a state criminal trial. *Harris v. Rivera, supra,* 454 U.S. at 344, 102 S.Ct. at 463. While recognizing that there are instances where the demands of due process require an explanation of the reasons for a decision, the Court stated that "such occasions are the exception rather than the rule." *Id.* (footnote omitted.) Federal judges, stated the Court, may not demand that state trial judges observe "any special procedures except when necessary to assure compliance with the dictates of the Federal Constitution." *Id.* at 344–45, 102 S.Ct. at 463–64. In holding that a constitutional defect did not exist, the Supreme Court recognized that inconsistency in criminal judgments rendered by a trial judge could "constitute evidence of arbitrariness that would undermine confidence in the quality of the judge's conclusion." *Id.* at 346, 102 S.Ct. at 464. The Court concluded, however, that an apparent inconsistency does not establish the presence of a fatal irregularity in a finding of guilt. *Id.* at 346–47, 102 S.Ct. at 464–65. Rather, the more likely explanation for the apparent inconsistency, posited the Supreme Court, is that the trial judge's observation of all that transpired at trial gave rise to a "doubt about the guilt of one defendant that he might or might not be able to articulate in a convincing manner." *Id.* at 347, 102 S.Ct. at 465 (footnote omitted).

■ The Court's opinion in *Rivera* recognizes the importance of the trial judge's opportunity to view the presentation of evidence and assess witness credibility. Factors that are not evident in the record, such as witness demeanor and general credibility, often influence determinations of guilt or innocence. Lacking the insight gained through actual presence at trial, an appellate court should give considerable deference to judgments rendered by a trial judge despite apparent inconsistency.

■ In addition, in a case such as the one presently being considered, involving apparent inconsistency between multiple counts of an indictment, we see no reason why a conviction on one count should be reversed because of acquittal on another, unless, as stated by Judge Hand, "there was some inconsistency in the findings upon one of the facts constituting the crime charged in [c]ount 1 and upon the same fact constituting the crime charged in [c]ount 2." *United States v. Maybury, supra,* 274 F.2d at 908 (Hand, J., dissenting in part and concurring in part). In the absence of demonstrated confusion on the part of the trial judge, which would raise the possibility that the conviction was erroneous, we do not see why the conviction should be reversed. A rule to the contrary would permit a person to "escape punishment for a crime of which he is found guilty, because he was acquitted of another crime of which he was also guilty." *Id.* We therefore hold that inconsistency in a trial judge's disposition of the various counts in an indictment does not warrant reversal unless there is also an inconsistency in the findings upon a fact common to the counts. By explaining their findings on the record, trial judges can avoid the appearance of inconsistency and assist in our review.

■ In reaching this holding, we recognize that apparent inconsistency in judgments may be the result of the trial judge's exercise of lenity in favor of a defendant. Although we disapprove of trial judges' exercise of judgment (as opposed to sentencing) lenity, *see Harris v. Rivera, supra,* 454 U.S. at 348, 102 S.Ct. at 465, we recognize that the practice exists and reject the argument that it should be invoked here to overturn a valid conviction. There is no reason why an appellant who benefited from the wrongful exercise of judicial lenity at the time of judgment should be permitted on appeal to profit further from the lenity by having an otherwise valid conviction overturned. *See People v. O'Malley,* 108 Ill.App.3d 823, 64 Ill.Dec. 333, 439 N.E.2d 998 (1982) (defendant on appeal

should not be allowed to take advantage of trial judge's exercise of lenity). In *Rivera,* the Supreme Court, while not approving of the exercise of lenity by a trial judge when ruling on guilt or innocence, stated that such a practice does not create a constitutional violation. *Harris v. Rivera, supra,* 454 U.S. at 348, 102 S.Ct. at 465. If a trial judge makes express contradictory findings upon a fact common to the counts, however, then an apparent inconsistency in judgments is more likely the result of confusion rather than of the exercise of lenity. In such a case, there is a danger that the defendant was not proved guilty beyond a reasonable doubt, and reversal may be warranted.

▮ In this case, appellant contends that his conviction of simple assault cannot be reconciled with the trial court's finding that he was not guilty of possession of a prohibited weapon. Our review of these judgments is limited by appellant's election not to request special findings of fact. Without the benefit of specific findings of fact, it is difficult to determine whether there is an inconsistency in the findings upon a fact common to the counts of simple assault and possession of a prohibited weapon. We are assisted to some extent, however, by the trial judge's statement made when he announced the verdicts, that he found the testimony of Clarence Scott to be credible.

The elements of the offense of possession of a prohibited weapon as set forth in D.C. Code § 22–3214(b) (1981) are possession of a weapon with intent to use it unlawfully against another. Appellant testified that he did possess a pistol, and this was reflected by his conviction of taking property without right. Thus, the only question of fact upon which there could have been an inconsistent finding is whether appellant had the intent to use the weapon unlawfully against another. If the trial judge had found, with respect to the assault charge,

that appellant unlawfully threatened Clarence Scott with the pistol and then had found, as to the possession of a prohibited weapon charge, that appellant lacked the intent to use the weapon unlawfully, there would then be an inconsistency in the findings upon a question of fact common to both charges—the question of unlawful use. Such an inconsistency would give rise to the possibility that the conviction was erroneous. However, in finding appellant guilty of assault, the trial judge stated that he found the testimony of Clarence Scott to be credible. Scott testified that appellant had picked up a gun and threatened him with it. As indicated by his statement concerning the credibility of Scott's testimony and the resulting assault conviction, the trial judge found that appellant had pointed a pistol at Scott. He did not make a finding to the contrary in acquitting appellant of possession of a prohibited weapon. Rather, without any explanation or finding, the trial judge found appellant not guilty of that charge.

▮ In view of the lack of an explanation for the not guilty finding and the trial judge's express statement that he found the victim's testimony concerning the assault to be credible, it is probable that lenity, rather than confusion, led to appellant's acquittal.[4] This is not a case involving express contradictory findings by a trial judge upon a fact common to multiple charges. Nor is it a case where we are without the benefit of any explanation for either of the allegedly inconsistent judgments. If we were presented with either of those situations, then we would be unable to conclude that the conviction was proper. However, given the judge's explanation that accompanied the assault conviction, we are afforded no reason to conclude that appellant's guilt was not proved beyond a reasonable doubt. On these particular facts, we see no fundamental reason why appellant should be permitted to invoke his acquittal on the one

---

4. The record shows that the trial judge was aware that defendant had already been convicted of carrying a pistol without a license as a result of his possession, later on the same day, of the very weapon involved here. He questioned the prosecution's decision to press for another conviction arising out of the possession of the same weapon.

charge to overturn a valid conviction on the other charge. If, as it appears, the trial judge exercised lenity, this should be reward enough for appellant.

Accordingly, the judgment on appeal is hereby

*Affirmed.*