Filed 7/17/14  In re Christian F. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re CHRISTIAN F., a Person Coming Under the Juvenile Court Law. | B249765<br><br>(Los Angeles County<br>Super. Ct. No. VJ43210) |
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>CHRISTIAN F.,<br><br>      Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Fumiko Hachiya Wasserman, Judge.  Affirmed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Lance E. Winters, Assistant Attorneys General, Linda C. Johnson and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

Minor and appellant Christian F. (minor) appeals from a judgment of the juvenile court entered after the court sustained a petition filed pursuant to Welfare and Institutions Code section 602 (petition or section 602 petition).[1]  Minor contends that the juvenile court erred in denying his motion to suppress evidence.  Finding no error, we affirm the judgment.

## BACKGROUND

The section 602 petition alleged that minor had been in possession of more than 28.5 grams of marijuana on school grounds in violation of Health and Safety Code section 11357, subdivision (e), a misdemeanor.  Minor brought a motion to suppress evidence pursuant to section 700.1  After hearing the evidence, the juvenile court denied the motion, and minor admitted the allegations of the petition.  On June 3, 2013, minor was declared a ward of the court and was placed at home on probation under specified conditions.  Minor filed a timely notice of appeal, challenging only the denial of his motion to suppress evidence.

At the hearing on the suppression motion, the juvenile court heard the testimony of the following witnesses:  Randy Castillo (Castillo), Whittier High School Dean of Students; Paul Garcia, Whittier Police Department School Resource Officer; and Probation Officer James Mendez (Mendez), also assigned to Whittier High School.

Castillo testified that On November 14, 2012, at approximately 12:30 p.m., he saw minor and two companions on the steps of the school auditorium, in a part of the campus that was outside the gates and off limits during lunchtime.  Unless the students had lunch passes, they would be in violation of school rules as stated in the student handbook.  Castillo approached the students and asked for identification and an off-campus lunch pass.  He also asked whether each of them had classes after lunch.  When the students responded that they did not have a class after lunch and could not produce a lunch pass or identification, Castillo asked them to come to his office so he could investigate the

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

potential truancy violation by verifying their schedules. The students complied and Castillo verified that all three had an after lunch class.

Castillo testified that whenever students were seen "just hanging out" and possibly truant, he suspected tagging or the use of intoxicating substances. It was thus routine in truancy investigations to ask students whether they had anything they were not supposed to have and if so, to search them. Thus Castillo asked minor if he had something. When minor said he did have something, he was asked for permission to search. Minor agreed, was searched, and a small amount of marijuana was found on his person. Minor seemed relaxed and cooperative throughout the investigation, which took a short amount of time.

Officer Garcia testified that he was in the office after Castillo detained minor on suspicion of truancy, but did not observe the search since he arrived afterward. Officer Garcia was told about the investigation and was given the recovered marijuana by Castillo. Officer Garcia could not remember everything Castillo told him, but after referring to his report, he testified he was told that minor had denied having anything illegal, Mendez asked him to remove items from his pockets, and minor then consented to the search.[2] When Mendez searched minor, he located the marijuana.

Mendez testified that he was a probation officer assigned to Whittier High School. He had conducted countless other searches of students and had no recollection of the subject investigation or the search of this minor.

The juvenile court denied the motion to suppress evidence without making express findings.

## DISCUSSION

Minor contends that the trial court erred in denying the suppression motion. He argues that the search was illegal under the Fourth Amendment because the detention, although proper at first, was improperly prolonged and the school officials failed to articulate facts supporting a reasonable suspicion that would justify a search of his

---

[2] In his report, Officer Garcia notes that minor complied when asked to remove items from his pockets, but which items were removed, if any, was not mentioned.

pockets. He also contends that the same circumstances invalidated his subsequent consent.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Public school officials are considered government agents within the purview of the Fourth Amendment. (*In re Randy G.* (2001) 26 Cal.4th 556, 567 (*Randy G.*).) However, due to the substantial interest that teachers and administrators have in maintaining discipline in the classroom and on school grounds, greater flexibility is required when balancing this interest against the child's interest in privacy. (*New Jersey v. T.L.O.* (1985) 469 U.S. 325, 339.) Thus, school officials may search students on campus without having probable cause to believe the student violated the law, so long as they have a reasonable suspicion that the student is violating or has violated a law or a school rule. (*Id.* at pp. 341-342; *In re William G.* (1985) 40 Cal.3d 550, 564.)

"Different interests are implicated by a search than by a seizure [citation], and a seizure is 'generally less intrusive' than a search. [Citations.] . . . [D]etentions of minor students on school grounds do not offend the Constitution, so long as they are not arbitrary, capricious, or for the purposes of harassment. [Citations.]" (*In re Randy G., supra*, 26 Cal.4th at p. 567.)

Minor apparently does not claim that Castillo's initial questioning of him and his companions on the steps of the auditorium was unreasonable. He contends, however, that being taken to the office "exceeded the bounds of the limited detention." Relying on *In re James D.* (1987) 43 Cal.3d 903 (*James D.*), minor argues that Castillo was limited to questioning minor regarding the reason for the initial detention, in this case truancy, and that once Castillo determined that minor had a class after lunch, Castillo's authority was limited to directing him back onto campus and instructing him to remain there for class.

Minor concludes that the detention was illegal and thus his later consent to search was invalid. (See *Florida v. Royer* (1983) 460 U.S. 491, 507-508.)

Minor's reliance on *James D*. is misplaced. There, patrol officers came across the minor carrying a book bag during school hours, not on school grounds, but walking about three miles from the nearest school. (*James D., supra*, 43 Cal.3d at p. 917.) The California Supreme Court held that the officers were not required to harbor a reasonable suspicion the that minor was committing a crime, because a detention for the purpose of a truancy investigation was authorized by Education Code section 48264, and it was objectively reasonable under the circumstances. (*James D.*, at pp. 915-918.)[3] The *James D*. court did not purport to limit the questions that school officials could ask a student suspected of breaking school rules, to mandate particular action, or to limit the location on campus where the school official might question a student.

Indeed, our high court has made clear that to require school officials to articulate facts supporting reasonable suspicion before taking or sending a student to the office "would make a mockery of school discipline and order." (*Randy G., supra*, 26 Cal.4th at p. 566.) Minors are not permitted to move freely about the campus during the school day, because "'[s]ome modicum of discipline and order is essential if the educational function is to be performed.' [Citation.] School personnel, to maintain or promote order, may need to send students into and out of classrooms, define or alter schedules, summon students to the office, or question them in the hall"; and any intrusion into the student's privacy is trivial by comparison. (*Ibid*.)

---

**3** The Supreme Court remanded for a determination whether the officers' subjective beliefs were reasonable. (*James D., supra*, 43 Cal.3d at p. 918.) *James D*. was decided after Proposition 8 was passed, requiring review of search and seizure issues under federal law, but before California courts held that such a review meant that the reasonable suspicion necessary to justify a detention would be measured solely by an objective standard. (*People v. Lloyd* (1992) 4 Cal.App.4th 724, 733, fn. 8; see Cal. Const., art. I, § 28.)

We conclude that detaining minor and taking him to the office to investigate his status was not an illegal or excessive detention, and thus did not render invalid his later consent to search.

Minor contends that even if the detention was valid, the prosecution failed to demonstrate that his consent was freely given. He contends that there were two searches: a routine search pursuant to an order to empty his pockets, and a second search after he consented to be searched. Minor cites Officer Garcia's testimony that consent was given after Mendez asked minor to empty his pockets, and he claims that Castillo testified that he routinely searched truant students. Minor concludes from this view of the evidence that the "first search" was mere routine, not justified by a reasonable suspicion that he possessed contraband; and he compares it to cases holding that the mere violation of a school regulation will not justify a search. (See *William G., supra*, 40 Cal.3d at pp. 555, 554 [mere tardiness]; *In re Lisa G.* (2004) 125 Cal.App.4th 801, 806-808 [disruptive behavior].) Minor contends that the illegality of this first search tainted the second.

We reject minor's view of the evidence. "'On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.]'" (*In re William V.* (2003) 111 Cal.App.4th 1464, 1468.) Minor acknowledges this rule but fails to follow it. Moreover, we do not reweigh the evidence, and "'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673.) Castillo did not testify that *searches* were routine, as minor claims; rather he testified that he routinely asked students whether they had anything they were not supposed to have, and to search them *if they did*. In addition, Castillo testified that minor was asked for consent to search *when* he replied that he had something he was not supposed to have. Officer Garcia's report was based on what he was told by Castillo as he was not present for the search and had no independent recollection of what Castillo said without reading his report. We assume the juvenile court resolved the conflicts in favor of finding that the search was not merely routine, that there was a single search, not two, and that minor consented to the search.

Minor contends that the evidence showed no more than submission to express or implied assertion of authority, and was thus involuntary. (See *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 233.) Whether that consent was voluntary is a question of fact to be determined from the totality of circumstances. (*Id*. at p. 227.) "'[It] is to be determined in the first instance by the trier of fact; and in that stage of the process, "The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings -- whether express or implied -- must be upheld if supported by substantial evidence.'" [Citation.]" (*People v. Monterroso* (2004) 34 Cal.4th 743, 758; see also *People v. James* (1977) 19 Cal.3d 99, 107.)

Minor suggests that submission to authority must be inferred from the uncomfortable setting and coercive atmosphere created by an improperly prolonged detention, an unlawful "first search," and the absence of *Miranda* warnings[4] or an advisement that he had a right to refuse consent. We disagree. We reject any suggestion that we should reweigh the evidence, and we reject minor's suggestion that we consider limited circumstances. An unjustified first search may be a factor to consider in finding a subsequent consent involuntary but does not decide the issue. (See *People v. Boyer* (2006) 38 Cal.4th 412, 447-450.) Similarly, the absence of *Miranda* warnings and advisement of the right to withhold consent may be factors to consider but do not compel a finding of coercion. (*People v. James, supra*, 19 Cal.3d at pp. 114-118.) Moreover, Castillo testified that Mendez *asked* minor if he could search him. A request to search implies a right to refuse. (*People v. Monterroso, supra*, 34 Cal.4th at p. 758; see *United States v. Drayton* (2002) 536 U.S. 194, 207.) We have already found the detention lawful, and not prolonged. Further, the setting was not unduly uncomfortable: as respondent notes, there were just two school officials in the office with three students, the investigation was brief, and minor was relaxed and cooperative throughout. Since Officer Garcia was not present, minor was not physically restrained or in the presence of

---

[4]    See *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445.

a weapon.[5]  We conclude that substantial evidence supports the implied finding that minor's consent was voluntary.

## DISPOSITION

The judgment of the juvenile court is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
FERNS

---

[5]     The respondent contends that the search was incident to a lawful arrest for truancy, although that theory was not advanced below.  Once a truancy investigation provides probable cause to believe that a student is truant and away from school, Education Code section 48264 permits a police officer or school administrator to make an arrest for the sole purpose of returning the student to school and to conduct a reasonable search incident to the arrest.  (*In re Humberto O*. (2000) 80 Cal.App.4th 237, 241-242.)  Because the theory was not raised below, minor had no occasion to present evidence to refute it or cross-examine prosecution witnesses on the issue, a circumstance mitigating against reaching the contention for first time on appeal.  (*People v. Miller* (1972) 7 Cal.3d 219, 227.)  In any event, the theory is weak, as minor was not away from school when Castillo confirmed he was truant, and Castillo did not testify that he arrested minor prior to the search.  We need not consider this issue at all, as we have otherwise found the detention and search to have been lawful.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.